UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAY BRADSHAW,

                              Plaintiff,

v.                                                          9:21-CV-0645
                                                           (GTS/ML)

M. GORDON; RONDO; MATTIAS; McCARTTER;
J. SCOTT; and ORBEGOZO,

                              Defendants.
_____

APPEARANCES:

HARRIS BEACH, PLLC                          DANIEL R. LeCOURS, ESQ
  Counsel for Plaintiff                          ELLIOT A. HALLAK, ESQ.
677 Broadway, Suite 1101
Albany, NY 12207

HON. LETITIA JAMES                          DAVID C. WHITE, ESQ.
Attorney General for the State of New York    Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION AND ORDER

### I.    INTRODUCTION

        On or about May 31, 2021, Plaintiff Jay Bradshaw commenced this action pro se by

filing a civil rights complaint against numerous state employees of Upstate Correctional

Facility pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to

proceed in forma pauperis ("IFP"), and a motion for preliminary injunctive relief.  Dkt. No. 1

("Compl."); Dkt. No. 4 ("IFP Application"); Dkt. No. 2 ("Preliminary Injunction Motion").  By

Decision and Order entered on July 23, 2021, this Court granted plaintiff's IFP Application in

accordance with 28 U.S.C. § 1915(g) ("Section 1915(g)"), and, following review of the

complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed some

of plaintiff's claims (and terminated some of the defendants), and directed service and a

response for the claims against the named defendants that survived sua sponte review, as

well as the Preliminary Injunction Motion.  Dkt. No. 7 ("July 2021 Order").[1]

Thereafter, on September 12, 2021, plaintiff filed an amended complaint;[2] and counsel

for the defendants filed an opposition to the Preliminary Injunction Motion and cross-motion

to revoke plaintiff's IFP status, which plaintiff subsequently opposed.  Dkt. No. 15 ("Am.

Compl."); Dkt. No. 16 ("Opposition to Preliminary Injunction Motion and Cross-Motion to

Revoke Plaintiff's IFP Status"); Dkt. No. 21 ("Response to Cross-Motion to Revoke IFP

Status").  By Order entered on November 4, 2021, the Court determined that an evidentiary

---

[1]  Roughly two weeks before the July 2021 Order, plaintiff commenced a new action in this District. *Bradshaw v. Uhler*, No. 21-CV-0776 (N.D.N.Y. filed July 8, 2021) ("*Bradshaw v. Uhler*").  Initially, that new action was assigned to United States District Judge David N. Hurd and United States Magistrate Judge Therese Wiley Dancks. However, by Order entered on July 27, 2021, that new action was reassigned to the undersigned and United States Magistrate Judge Miroslav Lovric based on a determination that it is related to this action under the District's General Order 12.  *Bradshaw v. Uhler*, Dkt. No. 5.

[2]  It is not entirely clear when the complaint in this case was effectively served, or whether, pursuant to Fed. R. Civ. P. 15(a), plaintiff was required to seek leave of the Court before filing his amended complaint on September 12, 2021.  *Compare Morris v. New York State Gaming Comm'n*, 18-CV-0384, 2019 WL 2423716, at *4 (W.D.N.Y. March 14, 2019) ("Because Plaintiff never served the original Complaint, the 21-day time limit to file an amended complaint under Rule 15(a)(1)(A) *never commenced*.") (emphasis added) *with Henderson v. Wells Fargo Bank, NA*, 13-CV-0378, 2015 WL 630438, at *2 (D. Conn. Feb. 13, 2015) ("Fed. R. Civ. P. 15(a) provides that a 'party may amend its pleading once as a matter of course within . . . 21 days after serving it.' Because Plaintiff has not yet served Defendant with the complaint, her motion is granted although unnecessary because leave of the Court is not required."); *see also Ramos v. Poore*, 15-CV-518, 2017 WL 1362017, at *2 (D. Conn. Apr. 11, 2017) ("The case law interpreting the[ ] two sections of Rule 15(a)(1) is unsettled as to whether a plaintiff may amend a complaint as of right more than twenty-one days after service of the complaint under Rule 15(a)(1)(B) when the defendants fail to file a responsive pleading or Rule 12 motion." (collecting cases)). In any event, even the most liberal constructions of plaintiff's amended complaint does not yield factual allegations plausibly suggesting an imminent danger of serious physical injury at the time of the filing of this action (on May 31, 2021) that are substantively different from those alleged in his original complaint.  (Compare Dkt. No. 1 with Dkt. No. 15.)  For this reason, when summarizing his allegations and claims below in Part II.A. of this Decision and Order, the Court does not treat the factual allegations of plaintiff's amended complaint as substantively different from those of his original complaint.

hearing on defendants' cross-motion to revoke plaintiff's IFP status was necessary to decide certain issues raised (and/or not addressed) by the parties in their submissions.  Dkt. No. 23. At the time of the Court's ruling, a cross-motion to revoke plaintiff's IFP status was also pending in *Bradshaw v. Uhler*.  *Bradshaw v. Uhler*, Dkt. No. 22.  As a result, the Court also issued an Order in that case on November 4, 2021, scheduling an evidentiary hearing, consolidated with the evidentiary hearing in this case.  *Id*., Dkt. No. 25.

Following these Orders, counsel was appointed for, and appeared on behalf of, plaintiff.  Dkt. Nos. 25, 26, 27; *see also Bradshaw v. Uhler*, Dkt. Nos. 29, 30, 31.  On December 15, 2021, the Court held the consolidated evidentiary hearing.

Currently before the Court are the following: (1) plaintiff's Preliminary Injunction Motion; and (2) defendants' Cross-Motion to Revoke Plaintiff's IFP Status.

## II.     BACKGROUND

### A.     Overview of the Complaint

Generally speaking, plaintiff's complaint alleges that various corrections officials from Upstate Correctional Facility denied him nine out of ten meals over a three-and-a-half-day period between May 28 and May 31, 2021, in retaliation for him filing a grievance against certain of these officials on May 20, 2021.  Compl. at 1-3.  The complaint further alleges that plaintiff "suffers from a pre-existing stomach condition" for which he has been "instructed by medical staff to eat [unleavened] bread with the prescribed medication to help reduce pains and the symptoms[,]" and has experienced "severe aggravated and unusual stomach pains, headaches, physical weakness, [and] mental pain and suffering as a result of being deprived food."  *Id*. at 2.  Finally, the complaint vaguely alleges that defendant Corrections Officer

Gordon "implied that plaintiff will eat at the officers discretion[,]" and that all of the named defendants "intend to continue to deprive plaintiff [of] meals in complete disregard for the substantial risk of harm to [his] health." *Id*.

### B.   Initial Determination of Imminent Danger

Prior to commencing this action, plaintiff had filed at least nineteen other civil actions in the district courts in the Second Circuit since 2008.  July 2021 Order at 3.  In at least four of those actions, plaintiff acquired "strikes" as defined in 28 U.S.C. § 1915(g) ("Section 1915(g)").[3]  *Id*. at 4 n.5.  Notwithstanding this determination, plaintiff's IFP Application was granted because the Court found that the allegations in the complaint were sufficient, albeit barely, to plausibly suggest that [plaintiff] was 'under imminent danger of serious physical injury' when he signed his complaint on May 31, 2021." *Id*. at 6.  The Court, however, noted that "this is a preliminary finding which defendants are entitled to challenge or refute in future filings." *Id*. (stating further that "plaintiff's IFP status will be revoked if, as the case progresses, it is determined that he did not face 'imminent danger' when he commenced this action or is otherwise not entitled to proceed IFP").

### C.   Overview of Defendants' Opposition and Cross-Motion, and Plaintiff's Response

Defendants argue that plaintiff's Preliminary Injunction Motion should be denied because he has failed to establish that he will suffer irreparable harm in the absence of the

---

[3]   The actions in which plaintiff acquired strikes are as follows: (1) *Bradshaw v. McQueen*, No. 08-CV-5518, Dkt. No. 32 (S.D.N.Y. Feb. 11, 2010) (dismissing complaint for failure to state a claim upon which relief may be granted); (2) *Bradshaw v. Brown*, No. 13-CV-4308, Dkt. No. 52 (E.D.N.Y. May 18, 2017) (Mandate dismissing appeal of dismissal order on grounds that it lacked "an arguable basis either in law or in fact"); (3) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 58 (E.D.N.Y. Aug. 22, 2017) (dismissing complaint for failure to state a claim upon which relief may be granted); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 62 (E.D.N.Y. Nov. 16. 2018) (Mandate dismissing appeal on grounds that it lacked "an arguable basis either in law or in fact").

preliminary injunctive relief that he seeks.  Dkt. No. 16 at 7-8.  In support of this argument, defendants have adduced record evidence showing that (1) plaintiff has never been denied meals at any point, (2) plaintiff was moved from cell 48 in C gallery to cell 18 in A gallery on June 11, 2021, (3) plaintiff has accepted all but two meals since August 23, 2021, and (4) plaintiff's medical records do not contain any indication that his health is at risk due to missed meals.  Dkt. No. 16-2; Dkt. No. 16-3; Dkt. No. 16-4; Dkt. No. 16-5; Dkt. No. 16-6; Dkt. No. 16-7; Dkt. No. 17.

Defendants separately argue that plaintiff's IFP status should be revoked because he did not face imminent danger when he filed the complaint.  Dkt. No. 16 at 8-9.  In support of this position, defendants have adduced record evidence, including sworn statements, cell block log books, the New York State Department of Corrections and Community Supervision ("DOCCS") Directive on Inmate Hunger Strikes, and plaintiff's medical records, which show, among other things, that (1) plaintiff was offered meals between May 28 and May 31, 2021, which he refused, and (2) plaintiff received lunch and dinner meals on May 31, 2021.  Dkt. No. 16-2; Dkt. No. 16-3; Dkt. No. 16-4; Dkt. No. 16-5; Dkt. No. 16-6; Dkt. No. 16-7; Dkt. No. 17.

In his response to defendants' cross-motion to revoke his IFP status, plaintiff has submitted a sworn statement wherein he attempts to refute certain factual information contained in defendants' documentary evidence, including the evidence showing that he refused meals between May 28 and May 31, 2021.  Dkt. No. 21.  Plaintiff also submitted certain exhibits with his response.  Dkt. No. 21-1; Dkt. No. 22.  In addition, plaintiff's complaint is verified.  Compl. at 3.

### D.    Evidentiary Hearing

The Court held an evidentiary hearing on defendants' motion to revoke plaintiff's IFP status on December 15, 2021.  (Text Minute Entry filed Dec. 15, 2021.)  At the hearing, the following four witnesses testified (and were cross-examined): (1) plaintiff; (2) Corrections Officer Michael Phillips; (3) Corrections Sergeant Eric Marshall; and (4) Nurse Brenda Holcombe.  (*Id*.; Dkt. Nos. 37, 39.)  In addition, the following eight exhibits were marked for identification: (1) Exhibit P-3 (Upstate Correctional Facility's SHU Incarcerated Individual Orientation Manual); (2) Exhibit P-4 (Declaration of Michael Phillips, dated October 6, 2021, and exhibits thereto); (3) Exhibit P-5 (Log Books for May 28-31, 2021, and July 1-5, 2021, Bates Stamped 000034-68); (4) Exhibit P-9 (Plaintiff's Supplemental Complaint, Case No. 21-CV-0776, dated September 18, 2021, and exhibits thereto); (5) Exhibit D-1 (Plaintiff's ambulatory health record); (6) Exhibit D-2 (Upstate Correctional Facility Cell Block 10 Logbooks); (7) Exhibit D-6 (Plaintiff's Complaint, Case No. 21-CV-0776); and (8) Exhibit D-9 (Plaintiff's Complaint, Case No. 21-CV-0645.  (Text Minute Entry filed Dec. 15, 2021; Dkt. Nos. 41-42.) The hearing lasted approximately two-and-a-half hours.  (Text Minute Entry filed Dec. 15, 2021.)

## III.    RELEVANT LEGAL STANDARDS

### A.    Motions for Injunctive Relief

Preliminary injunctive relief "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  The standard a court must utilize

in considering whether to grant a request for injunctive relief is well-settled in this Circuit. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010).  To prevail on a motion for preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Id*. at 35; *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011).  However, when the moving party seeks a mandatory injunction that alters the status quo by commanding a positive act, the burden is "even higher." *Cacchillo*, 638 F.3d at 405-06; *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996).  Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Markets*, 598 F.3d at 35 n.4 (internal quotation marks omitted).

"'A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)).  Generally an alleged violation of a constitutional right creates a presumption of irreparable harm. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996).  However, speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983).  Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if

a court waits until the end of trial to resolve the harm." *Bisnews AFE (Thailand)*, 437 Fed. App'x at 58 (quoting *Faiveley*, 559 F.3d at 118); *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction. . . . A party who seeks the extraordinary remedy of a preliminary injunction must show the alleged irreparable harm to be imminent, not remote or speculative, and the alleged injury to constitute one that is incapable of being fully remedied by monetary damages." (citations omitted)).  A finding of irreparable harm cannot be based solely on past conduct. *Haden v. Hellinger*, No. 9:14-CV-0318, 2016 WL 589703, at *1 (N.D.N.Y. Feb. 11, 2016).

The district court has wide discretion in determining whether to grant preliminary injunctive relief.  *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005).  "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted).

### B.     The "Three Strikes" Rule and Imminent Danger Exception

Where a plaintiff seeks leave to proceed IFP, the Court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the Court's filing fee of four hundred and two dollars ($402.00).[4]  The Court must also determine

---

[4] "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee . . . at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

whether the "three strikes" provision of Section 1915(g) bars the plaintiff from proceeding IFP and without prepayment of the filing fee.[5]   More specifically, Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The "imminent danger" exception protects a prison inmate exposed to potential "serious physical injury" from the consequences of his earlier mistakes in filing frivolous litigation.  Congress enacted the imminent danger exception contained in the final phrase of § 1915(g) as a "safety valve" to prevent impending harms to prisoners otherwise barred from proceeding in forma pauperis.  *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002).  "[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint–in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed."  *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) (citation omitted); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d Cir. 2007) (imminent danger claims must be evaluated at the time the complaint is filed, rather than at the time of the events alleged).  In addition, "§ 1915(g) allows a three-strikes litigant to proceed [in forma pauperis] only when there exists an

---

[5]  The manifest intent of Congress in enacting Section 1915(g) was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates.  *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007).  The question of whether a prior dismissal is a "strike" is a matter of statutory interpretation and, as such, is a question for the court to determine as a matter of law.  *Tafari*, 473 F.3d at 442-43.

adequate nexus between the claims he seeks to pursue and the imminent danger he alleges." *Pettus*, 554 F.3d at 296.  In deciding whether such a nexus exists, the Second Circuit instructs the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would *redress* that injury." *Id*. at 298-99.  Both requirements must be met in order for the three-strikes litigant to proceed in forma pauperis.  *Id*.

Generally speaking, the allegations relevant to the imminent danger inquiry "are those in which [plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment." *Chavis v. Chappius*, 618 F.3d 162, 165 (2d Cir. 2010).  Although the Second Circuit has cautioned against "an overly detailed inquiry into whether the allegations qualify for the exception," *id*. at 169-70 (*quoting Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007)), when a defendant challenges a prisoner's claim of imminent danger, a district court may "reexamine" its provisional determination of imminent danger and "conduct a narrow evidentiary inquiry into the prisoner-litigant's fear of imminent danger" at the time of filing. *Shepherd v. Annucci*, 921 F.3d 89, 94-95 (2d Cir. 2019).  If the evidentiary submissions show the plaintiff's explanation for why he was in imminent danger to be "ridiculous," "conclusory," or "without foundation[,]" the district court may revoke the plaintiff's previously granted IFP status.  *Id*. at 95, 97; *see also Chavis*, 618 F.3d at 170 ("A court may find that a complaint does not satisfy the 'imminent danger' exception if the complainant's 'claims of imminent danger are conclusory or ridiculous.'") (quoting *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003)); *Nelson v. Nesmith*, No. 9:06-CV-1177 (TJM/DEP), 2008 WL

3836387, at *5 (N.D.N.Y. Aug. 13, 2008) ("The imminent danger claimed by the inmate . . . must be real, and not merely speculative or hypothetical."); *accord, Welch v. Selsky*, No. 9:06-CV-0812 (LEK/DEP), 2008 WL 238553, at *5 (N.D.N.Y. Jan 28, 2008); *Gamble v. Maynard*, No. 9:06-CV-1543 (DNH/DEP), 2008 WL 150364, at *4 (N.D.N.Y. Jan. 14, 2008).

## IV.    ANALYSIS

### A.    Plaintiff's Preliminary Injunction Motion

As noted in the July 2021 Order, plaintiff seeks a preliminary injunction directing defendants to "provide [him] meals and . . . cease from all forms of retaliation against [him]." July 2021 Order at 19.

Upon review, the Court finds that plaintiff has failed to meet the heavy burden for a mandatory injunction.

As an initial matter, plaintiff admits that he was provided with lunch and dinner meals on the day he signed his complaint, Dkt. No. 21, ¶ 78, and the past allegations of misconduct stated in plaintiff's complaint, standing alone, are insufficient to support a finding of irreparable harm. *Haden*, 2016 WL 589703, at *1. Moreover, defendants have introduced record evidence showing that plaintiff missed only two meals between August 23 and September 2, 2021, which plaintiff does not refute. Dkt. No. 16-7 at 40-82; Dkt. No. 21, ¶¶ 67-71. In fact, by plaintiff's own account, during the six-week period between August 24 and October 5, 2021, when plaintiff submitted his response for filing, he missed a total of only four meals, and that was because on each of these four occasions he refused the meal after it was delivered to him on an "unwrapped" tray. Dkt. No. 21, ¶¶ 66-71. Furthermore, plaintiff's medical records, which cover a time period through August 20, 2021, are devoid of

any evidence showing that plaintiff suffered any significant adverse health effects from missed meals.  Dkt. No. 17.

Simply put, plaintiff has not made a sufficient showing that he will suffer an injury that is neither remote nor speculative should his request for injunctive relief be denied. Accordingly, plaintiff's Preliminary Injunction Motion is denied.[6]

### B.      Defendants' Cross-Motion to Revoke Plaintiff's IFP Status

The Court initially found that the allegations in the complaint were sufficient to plausibly suggest that plaintiff was under imminent danger of physical injury when he signed his complaint on May 31, 2021.  In reaching this determination, the Court highlighted three key allegations.  First, the complaint alleged that plaintiff "suffers from a pre-existing stomach condition" and has been "instructed by medical staff to eat [unleavened] bread with [his] prescribed medication to help reduce pains and the symptoms[.]"  July 2021 Order at 5 (citing Compl. at 2).  Second, the complaint alleged that plaintiff has experienced "severe aggravated and unusual stomach pains, headaches, physical weakness, [and] mental pain and suffering as a result of being deprived food." *Id*. at 5-6 (citing Compl. at 2).  Third, the complaint alleged that defendant Gordon "implied that plaintiff will eat at the officers discretion[,]" and that all of the named defendants "intend[ed] to continue to deprive plaintiff [of] meals in complete disregard for the substantial risk of harm to [his] health." *Id*.  Taken together, these allegations plausibly suggested that (1) plaintiff faced a unique risk of serious

---

[6]  In reaching this determination, the Court is mindful that plaintiff has filed several letters since responding to defendants' cross-motion wherein he repeatedly complains of meal deprivations and tampering. Dkt. Nos. 47, 48, 49, 55, 57, 59, 60. These unsworn submissions (and unauthenticated exhibits), however, cannot be considered record evidence in support of the requested relief, nor do they make it "more or less probable" (for purposes of Fed. R. Evid. 401) that plaintiff suffered a deprivation of meals *at the time of the filing of this action* (the relevant time period).

physical harm if he missed multiple consecutive meals, based on his stomach condition and need to take his prescribed medication with food, (2) this unique risk had not dissipated at the time the complaint was filed, and (3) a potential existed for plaintiff to experience a prolonged denial of meals.

As discussed more fully below, the record now before the Court makes clear that (1) plaintiff did not face a unique risk of serious physical harm from missing multiple consecutive meals, (2) there was no effort to cover up plaintiff's missed meals, (3) plaintiff had access to medical treatment during the relevant time period, which he never sought, (4) plaintiff was never at risk of missing more than two additional meals without receiving mandatory medical treatment, and (5) the alleged harm had dissipated by the time plaintiff submitted his complaint for filing.  In other words, plaintiff did not face an imminent danger of serious physical injury at the time he submitted his complaint for filing.

### 1. Imminent Danger

As noted, "for a prisoner to qualify for the imminent danger exception, the danger must be present when he *files* his complaint–in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) (emphasis added); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d Cir. 2007) (finding that imminent danger claims must be evaluated at the time the complaint is filed, rather than at the time of the events alleged). "Under the 'prison mailbox rule,' the date of filing is deemed to be the date that the prisoner–plaintiff delivered his complaint to a prison guard for mailing."  *Chavis v. McCulloch*, No. 9:20-CV-0435 (DNH/CFH), 2020 WL 5051571, at *1 (N.D.N.Y. Aug. 27, 2020).

13

Ordinarily, the date of delivery to a prison guard is presumed to be the date that the complaint was signed. *Id.* (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988)).

In the July 2021 Order, the Court assumed that plaintiff's complaint was filed on the same date that it was signed, and at a time when plaintiff remained at risk of continued physical harm due to not being fed. This assumption was based on plaintiff's express allegations that he had been denied seven consecutive meals as a means of punishment for filing a prior grievance, and feared that defendants "intend[ed] to continue to deprive [him] [of] meals in complete disregard for the substantial risk of harm to [his] health." Compl. at 2.

It is now clear from the evidence before this Court–including evidence submitted by plaintiff–that plaintiff's complaint was provided to a corrections official for filing on the morning of June 1, 2021. *See* Dkt. No. 21, ¶ 14 (stating that mail was collected from plaintiff on May 28, 2021, at approximately 6:00 a.m., "prior to breakfast"); Dkt. No. 21, ¶ 31 (stating that mail was collected from plaintiff on June 1, 2021, at approximately 6:00 a.m., "prior to breakfast"); Dkt. No. 21 at 17 (stating that "prior to breakfast" on each day between May 28 and May 31, 2021, "the defendants would open the . . . hatch [to plaintiff's cell] to collect [his] mails and . . . provide [his] supplies"). By this time, plaintiff was aware that he had received lunch and dinner meals the previous day. However, plaintiff nevertheless submitted a misleading sworn complaint to the Court suggesting that he remained at risk of harm. *See* Compl. at 2, ¶¶ 17-19 (emphasis added).[7]

While such allegations present Rule 11 issues, more importantly for purposes of

---

[7] Perhaps realizing this timing issue, plaintiff testified during the evidentiary hearing that he submitted his complaint for filing on May 31, 2021. Hrg. T. Of course, this testimony is wholly inconsistent with plaintiff's own motion papers. *See* Dkt. No. 21 at 17.

defendants' motion to revoke, there can be no doubt that plaintiff did not face an *imminent risk* of serious physical harm due to a continuous deprivation of food over a four-day period when he submitted his complaint to a corrections officer (and thus "filed" it with the Court) on the morning of June 1, 2021.  Instead, plaintiff experienced only past harm, which had dissipated by the time he delivered his complaint for filing.[8]

Insofar as plaintiff seeks to base his "imminent danger" claim on allegations that corrections officials "collided with" him in an effort to provoke him or cause him harm, the result is no different.  However, plaintiff is also respectfully advised that being repeatedly bumped or even "collided with" in the hallway by one or more corrections officers, while unprofessional (and conceivably sufficient to give rise to an Eighth Amendment claim, depending on the frequency, duration and severity of the alleged conduct, and the existence of exacerbating factual allegations), does not constitute being "under imminent danger of serious physical injury" under 28 U.S.C. § 1915(g).  *Cf. Canady v. Roesler*, 668 F. App'x 642 (5th Cir. 2016) ("His allegations that . . . an officer pushed him in the chest and insulted him on one occasion almost two years before the filing of the civil rights complaint, and that a disciplinary officer yelled at him and threatened him two months prior to the filing of the complaint are insufficient to establish that he was in imminent danger of serious physical injury at the relevant times . . . .").

_____

[8] In finding that plaintiff's hearing testimony on this issue lacking in credibility, the Court generally relies on the following: (1) plaintiff's unconvincing mannerisms and body language (including, but not limited to, his demeanor, tone of voice, facial expressions, and eye contact or lack thereof) during the relevant portions of his testimony; (2) the inconsistency if not contradiction between plaintiff's testimony that he was provided with only breakfast on May 31, 2021, and would "continue to [be] deprive[d] [of] meals" after breakfast on May 31, 2021, and the evidence that (a) plaintiff refused seven consecutive meals either expressly or through his non-compliant behavior between May 28 and May 31, 2021, and (b) plaintiff received lunch and dinner meals on May 31, 2021; and (3) the fact that defendants adduced documentary evidence (e.g., Exhibit D-2) and/or witness testimony (e.g., the testimony of Corrections Officer Michael Phillips, and/or Corrections Sergeant Eric Marshall) that credibly undermined the relevant portions of plaintiff's hearing testimony.

For this reason alone, plaintiff's IFP status must be, and is, revoked.[9]

### 2. Serious Physical Injury

As noted, a three strikes prisoner must show that he faced "an imminent danger of serious physical injury" at the time he submitted his complaint for filing in order to proceed IFP.  42 U.S.C. § 1915(g).  Although the term "serious physical injury" is not expressly defined in Section 1915(g), several courts have made clear that something more than temporary discomfort associated with a limited number of missed meals is necessary to satisfy the requirement.  *See, e.g., Daker v. Bryson*, 784 Fed. App'x 690, 693 (11th Cir. Aug. 8, 2019) (per curiam) (finding that a plaintiff alleging denial of nutritionally adequate food and weight loss did not establish imminent danger); *Sims v. Caruso*, No. 11-CV-92, 2011 WL 672232, at *2 (W.D. Mich. Feb. 18, 2011) ("The fact that Plaintiff has lost some weight, standing alone, falls short or establishing serious physical injury"); *Hernandez v. Ventura County*, No. 09-CV-7838, 2010 WL 3603491 (C.D. Cal. July 27, 2010) (finding that a claim that food practices at jail caused inmate to lose a significant amount of weight was insufficient to demonstrate "serious physical injury" under § 1915(g) where the inmate did not allege that such practices caused or threaten to cause him to go hungry, to suffer malnutrition, or to suffer any negative health consequences), *report and recommendation adopted by* 2010 WL 3603485 (C.D. Cal. Sept. 6, 2010); *Sayre v. Waid*, No. 08-CV-142, 2009 WL 249982, at *2 (N.D. W.V. Feb. 2, 2009) ("[W]eight loss, in and of itself, is not indicative of a serious physical injury...."); *Mateo v. Vosbrink*, No. 06-CV-115, 2006 WL

---

[9]  As discussed below, there is also no credible evidence in the record showing that at the time of filing plaintiff continued to suffer from injuries based on the aforementioned past harm, for which he sought and was refused treatment.

2038499, at *2 (N.D. Fla. July 18, 2006) ("The fact that Plaintiff is constantly hungry and suffers hunger pangs does not constitute a serious physical injury...."); *cf. Jackson v. Marks*, 722 Fed. App'x 106, 107 (2d Cir. 2018) (concluding that inmate-plaintiff's allegations of "missing approximately half of his weekly meals" over a period of approximately one year, which "caused him to suffer weight loss, stress, and hunger[,]" were sufficient to "meet the exception to the three-strikes rule because the allegations of deprivations of food were prolonged and substantial" (emphasis added)); *Taylor v. Walker*, No. 07-CV-706, 2007 WL 4365718, at *2 (S.D. Ill. Dec. 11, 2007) ("Because Plaintiff may not create the 'imminent danger' required by § 1915(g) by commencing a hunger strike and because there is no indication that Plaintiff's hunger strike causes 'serious physical injury'-due to the timely intervention of prison officials and Plaintiff's voluntary cessation of said strikes-Plaintiff has not satisfied the requirements of § 1915(g) so as to proceed in forma pauperis in this action.").

In support of their cross-motion, defendants have adduced record evidence showing the following: (1) plaintiff refused each of the meals that he did not receive between May 28 and the morning of May 31, 2021; (2) nurses made rounds in plaintiff's cell block area between May 28 and May 31, 2021; (3) plaintiff received lunch and dinner meals on May 31, 2021; and (4) DOCCS requires that any inmate who misses nine consecutive undergo a medical evaluation.  Dkt. No. 16-2; Dkt. No. 16-3; Dkt. No. 16-4; Dkt. No. 16-5; Dkt. No. 16-6; Dkt. No. 16-7; Dkt. No. 17.

In response, plaintiff attempts to refute some of these facts, and minimize the significance of others.  For example, plaintiff states that the named defendants falsely recorded in the log books that he refused meals when in actuality these officials refused to

17

provide those meals to him.  Dkt. No. 21, ¶¶ 14-28.  Plaintiff also states that, although nurses

made rounds through his cell block area, he and the other inmates were prevented by

unidentified "officers" from communicating with medical staff between May 28 and June 3,

2021.  *Id*., ¶¶ 27-28, 31-34, 74.  In addition, plaintiff states that he was denied several meals

after May 31, 2021, and told by a nurse on June 4, 2021, that he could no longer receive his

stomach medication because it was not meant for long-term use.  *Id*. at 13, ¶ 76.

Insofar as plaintiff claims that he did not refuse the meals that he was denied,

defendants Gibson, Matthie, McCarger, Orbegozo, Rondo, and Scott have each provided

sworn statements that they never denied plaintiff a meal between May 28 and May 31, 2021,

that he wished to accept.  Dkt. Nos. 16-2, 16-3, 16-4, 16-5, 16-6, 16-7.  In addition to

testifying that these statements are not true, plaintiff provided the Court with video footage of

the exterior of his cell on June 6 (Dkt. No. 53, Exhibit A), July 3 (Dkt. No. 53, Exhibits D, E),

and July 7, 2021 (Dkt. No. 53, Exhibit G), which are dates plaintiff testified that he did not

receive meals.  Hrg. T.[10]  The recordings from June 6 and July 7 clearly show that corrections

officials offered plaintiff his meals, which he refused; and one of the recordings from July 3

shows that plaintiff was asked to turn on the light in his cell, and was denied a meal after

refusing to do so.  *See* Dkt. No. 53, Exhibit D.[11]  In light of these recordings, as well as the

other issues with plaintiff's testimony discussed above, the Court finds that the sworn

statements from the defendants indicating that meals were offered to plaintiff between May

---

[10]  The Court is mindful that the video footage from July 7, 2021, is not relevant to either this action or *Bradshaw v. Uhler*, which was filed on July 4, 2021. The Court is also mindful that plaintiff was provided with forty-three (43) video recordings showing activity outside of his cell on different dates, *see* Dkt. No. 46, yet chose to provide the Court with only a limited number of these recordings.

[11]  It was undoubtedly known to corrections officials that their activity outside of the cell block area was being recorded.

28 and May 31, 2021, are more credible than plaintiff's testimony that he was intentionally deprived of seven consecutive meals during this time.

In any event, the Court declines to accept plaintiff's statement that he and all other inmates in his cell block area were entirely prevented from communicating with medical staff between May 28 and May 31, 2021, for at least three reasons.

First, the complaint is devoid of any allegations which plausibly suggest that plaintiff did not have access to medical treatment, or an ability to communicate with medical staff, between May 28 and May 31, 2021.  Rather, plaintiff's statement was made for the first time in response to defendants' cross-motion to revoke his IFP status.

Second, the log book entries expressly state that nurses made rounds, and communicated with certain inmates about medical issues, between May 28 and May 31, 2021.  Dkt. No. 16-7 at 11-26 (noting morning and evening "med run[s]" and "nurse on rounds"); Dkt. No. 16-7 at 15 (noting inmate request for emergency medical treatment at 10:32 p.m. and nurse on the block at 10:37 p.m.).  It strains credulity to believe that corrections officers would have inconsistently prevented nurses from speaking to inmates during rounds, and then falsely logged successful medication "runs" and the receipt of an inmate medical complaint.

Third, the ambulatory health records submitted by defendants show that plaintiff consulted nurses regarding Omperazole, his prescribed stomach medication, on June 3 and June 4, 2021.  Dkt. No. 17 at 13.  It is difficult for the Court to believe that nurses would have been prevented from speaking to inmates during rounds made between May 28 and June 3, 2021, which coincidentally overlaps with a period that plaintiff was allegedly deprived of meals, and yet suddenly been allowed to speak with at least plaintiff regarding his stomach

19

medication on June 3 and June 4, 2021.[12]

In light of the foregoing, even assuming that plaintiff was denied meals that he wished to receive between May 28 and May 31, 2021,[13] the Court has no reasonable basis to conclude from the complaint and record evidence adduced by the parties that he was unable to communicate any adverse health effects associated with missed meals to medical staff. Moreover, Nurse Brenda Holcombe, who worked at Upstate Correctional Facility during the relevant time period, testified that, if an inmate advises a nurse that he is in danger, the nurse is required to report the inmate's concern "up the chain[.]"  Hrg. T.  Nurse Holcombe further testified that, if an inmate expresses concern for their safety to a nurse, or advises a nurse that he is not eating or being fed, the matter is documented in the inmate's medical records.  *Id*.  Thus, according to Nurse Holcombe (whose testimony the Court finds credible), had plaintiff expressed concerns for his health or safety, or complained about not being fed, the issue would have been documented and addressed.

Plaintiff's decision not to express concerns to medical staff regarding his health is therefore telling as to his state of mind at the time, as is his medical file, which shows that he refused his prescribed stomach medication on June 4, 2021–after it was ordered for him the

---

[12]   In one of his post-hearing submissions, plaintiff also attached a copy of a sick call slip that is dated June 2, 2021, wherein he complains about stomach pain.  Dkt. No. 47.  The document is further proof that plaintiff had access to sick call during the relevant time period.

[13]   The Court notes that plaintiff has persistently argued that proof exists that he was denied meals between May 28 and May 31, 2021, in the form of proof that he was denied meals at times *after* those dates. However, generally, subsequent conduct is of little if any relevance (under Fed. R. Evid. 401) in proving prior conduct.  *See* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."); Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.."); *cf.* Fed. R. Evid. 407 (treating subsequent remedial measures as not admissible to prove culpable conduct).  Furthermore, as discussed below, at least with respect to the video recordings provided by plaintiff of events after May 31, 2021, the Court does not agree with plaintiff's interpretation.

previous day–based on his belief that the medication was "not helping[.]"  Dkt. No. 17 at 13.[14]

These facts make clear that plaintiff (1) did not need food to take his prescribed medication

and/or did not need his prescribed medication to alleviate a serious stomach condition when

he missed meals between May 28 and May 31, 2021, (2) did not believe that his missed

meals presented a condition of urgency worthy of reporting to medical staff, and (3) had not

suffered any serious adverse health consequences as a result of the meals he missed.  In

other words, it is now clear to the Court that, at the time of filing, plaintiff did not face a

unique risk of *serious physical harm* based on the meals that he had missed, or the potential

that he may miss a few more, regardless of the reason.

Moreover, the DOCCS Directive on Inmate Hunger Strikes indicates that an inmate

who voluntarily refuses to eat nine consecutive meals is deemed to be "on a hunger strike."

Dkt. No. 16-3 at 30.  The Directive further indicates that an inmate on a hunger strike is

"referred to Health Services and to the [Office of Mental Health] staff for counseling and

---

[14]  Plaintiff states that the nurse's recording in his medical file is incorrect, and that it was the nurse who actually refused to provide him with his prescribed medication.  Dkt. No. 21, ¶ 76.  The Court declines to accept the truth of this statement for several reasons.  First, the ambulatory health record from June 3, 2021, shows that a refill of plaintiff's prescription for Omperazole was ordered on this date.  Dkt. No. 17 at 13.  Thus, plaintiff's statement requires this Court to accept the allegation that the nurse who met with him on June 4, 2021, refused to provide him with Omperazole, despite knowing that it had been ordered for him the previous day by a different medical provider, and then falsely noted that the medication was refused by plaintiff.  While this is certainly a difficult proposition to accept, if the statement were true, it is inconceivable to the Court that plaintiff would not have filed a grievance regarding the denial, or at least requested the medication on a subsequent day (assuming he believed that he had a medical need for it).  Yet there is no evidence in the record before this Court that either of these things occurred.  Furthermore, the recording of plaintiff's belief that his medication was "not helping" is consistent with his allegations made in a different complaint filed after this action was commenced.  More specifically, in plaintiff's pursuit of claims unrelated to the claims asserted in this action, he swears (in a verified complaint) that he engaged (apparently voluntarily) in a hunger strike over a period of five days in July of 2020 at Mid-State Correctional Facility.  *Bradshaw v. Annucci*, No. 21-CV-901, Dkt. No. 1 at 13, ¶ 115 (N.D.N.Y. Aug. 11, 2021).  During this time, by his own admission, he had been prescribed the same medication that he claims needed to be taken with food to "reduce pains and the symptoms."  Compl., ¶ 17; Dkt. No. 21 at 13, ¶ 73.  The Court notes that this hunger strike undermines plaintiff's allegation that, when he filed his complaint in this action less than a year later, he suffered from a pre-existing stomach condition that required him to take medication *with food*.

clinical assessment to determine the cause of the inmate's refusal to eat." *Id*. at 31.[15]

Because defendants logged plaintiff's missed meals, he was never at risk of missing more than two additional meals before receiving mandatory medical treatment. Thus, it is also now clear to the Court that this is not a case of a potential cover up of meal deprivations that could have continued for a prolonged period of time, as the allegations in the complaint suggest.[16]

For all of these reasons, based on the record evidence presented by the parties, the Court finds that, at the time plaintiff filed his complaint (and even at the time he signed it), he did not face an imminent risk of serious physical injury. As a result, revocation of plaintiff's IFP status is appropriate. Accordingly, defendants' cross-motion to revoke plaintiff's IFP status is granted.

## V.    CONCLUSION

**WHEREFORE**, it is hereby

_____

[15] Nurse Holcombe testified that, at Upstate Correctional Facility, when an inmate misses nine consecutive meals, he receives "a full assessment", which includes checking vital signs, skin, blood sugar, and weight, as well as "a mental health referral to try to assess why this is going on." Hrg. T. Nurse Holcombe further testified that the purpose of the extensive evaluation is "to make sure [the inmate is] not in danger of being sick from not eating." *Id*.

[16] In finding that plaintiff's hearing testimony on this issue lacking in credibility, the Court generally relies on the following: (1) plaintiff's unconvincing mannerisms and body language (including, but not limited to, his demeanor, tone of voice, facial expressions, and eye contact or lack thereof) during the relevant portions of his testimony; (2) the inconsistency if not contradiction between plaintiff's testimony that his stomach condition requires that he take Omeprazole (the generic version of Prilosec) with food and his testimony or sworn representation that (a) his stomach condition was "never diagnosed," (b) during his missed meals, he did not submit a sick call request, (c) he currently no longer even takes Omeprazole, and (d) while taking Omeprazole in July of 2020, he went on (and survived) a "hunger strike"; (3) the inconsistency if not contradiction between plaintiff's testimony that being deprived of the seven meals in question caused him dangerous weight loss and his testimony or sworn representation that (a) currently he weighs 151 pounds, more than 20 pounds less than he weighed during the time in question, and (b) in July of 2020, he went on (and survived) a "hunger strike"; and (4) the fact that defendants adduced documentary evidence (e.g., Exhibit D-1) and/or witness testimony (i.e., the testimony of Nurse Brenda Holcombe) that credibly undermined the relevant portions of plaintiff's hearing testimony.

**ORDERED** that plaintiff's Preliminary Injunction Motion (Dkt. No. 2) is **<u>DENIED</u>** for the reasons stated above; and it is further

**ORDERED** that defendants' Cross-Motion to Revoke plaintiff's IFP status (Dkt. No. 16) is **<u>GRANTED</u>** for the reasons stated above; and it is further

**ORDERED** that plaintiff's IFP status is **<u>REVOKED</u>**; and it is further

**ORDERED** that, if plaintiff wishes to proceed with this action, he must pay the Court's filing fee of four hundred and two dollars ($402.00) in full within **THIRTY (30) DAYS** of the date of this Decision and Order; and it is further

**ORDERED** that, if plaintiff timely pays the filing fee in full, the Clerk of the Court shall return the file to this Court for review; and it is further

**ORDERED** that, if plaintiff fails to timely pay the filing fee in full, the Clerk shall enter judgment **DISMISSING** this action without prejudice, without further order of this Court; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**

Dated: February 18, 2022
        Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge